UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JDS GROUP LTD.,

        Plaintiff,

     -v-                       17-cv-6293 (MAT)
                                    **DECISION AND ORDER**

METAL SUPERMARKETS FRANCHISING
AMERICA, INC.,

        Defendant.

## I.  Introduction

Plaintiff JDS Group Ltd. ("JDS" or "plaintiff") commenced the instant action on May 9, 2017, alleging that defendant Metal Supermarkets Franchising America, Inc. ("MSFA" or "defendant") is violating the Washington State Franchise Investment Protection Act, Revised Code of Washington ("RCW") §§ 19.100.010 *et seq.* ("FIPA") and breaching the implied covenant of good faith and fair dealing by seeking to force JDS to install new operating software. Concurrently with the complaint, plaintiff filed a motion for a temporary restraining order and preliminary injunction (Docket No. 3) and a motion for an expedited hearing of its request for injunctive relief (Docket No. 2). The parties subsequently agreed to a briefing schedule, and defendant agreed to delay installation of the software until June 23, 2017. As a result, the Court finds that plaintiff's request for an expedited hearing is moot, and it is accordingly denied. For the reasons set forth below, plaintiff's request for a temporary restraining order and preliminary injunction is denied.

## II. Background

The following facts are taken from the briefs, affidavits/declarations, and exhibits submitted by the parties.

JDS is a Washington corporation with its principal place of business in Kent, Washington. It operates two franchises licensed by MSFA as retail vendors of metal components used in various industries, pursuant to two franchise agreements. MSFA is a Canadian business entity with its principal place of business in Mississauga, Canada. This Court has diversity jurisdiction over the matter, and the franchise agreements contain a forum selection cause setting venue in this District.

JDS has been a franchisee of MSFA for approximately 10 years, and operates two retail locations, one in Kent, Washington, and one in Portland, Oregon. JDS has used and continues to use a computer software platform known as "Metal Magic," which was provided to it by MSFA, in its stores. In 2012, MSFA determined that Metal Magic was outdated, inefficient, and unable to accommodate anticipated growth and functionality changes. As a result, MSFA undertook development of a new, modern software system. The development of this new software system, which is known as MetalTech, took three years and cost in excess of $1,000,000.

MSFA began installation of MetalTech in 2015, starting first in stores that had not previously used Metal Magic, then in lower volume stores, then higher volume stores, and finally multi-unit

franchised operations.  Plaintiff maintains that MetalTech is unreliable and does not perform as required.  Specifically, plaintiff contends that MetalTech is unable to generate accurate and reliable financial statements, readily calculate sales tax, "run more than a few checks at a time," reliably generate invoices, or effectively transfer materials between co-owned stores, and that MetalTech makes it more time-consuming to perform simple tasks than Metal Magic did.  Plaintiff has submitted declarations from six other MSFA franchisees, all of whom report that they have encountered serious problems while using MetalTech that have negatively impacted their ability to do business.  In opposition, defendant has produced evidence that 78 of 86 Metal Supermarket stores are currently using MetalTech, that no store has been forced to close as a result of the new software, and that, to the contrary, stores that have converted to MetalTech have, on average, seen a 7.4% increase in sales in the months following the conversion.

In August 2016, plaintiff's then-counsel, purportedly acting on behalf of the "Metal Supermarkets Franchisee Association" (a now-inactive association of which plaintiff's co-owner was the registered agent), sent a letter to MSFA detailing concerns about MetalTech.  As such, it is clear that plaintiff was on notice of the claimed issues with MetalTech at least by August 2016. Nevertheless, in January 2017, plaintiff executed new franchise

agreements, which were negotiated by the same lawyer who sent the August 2016 letter. The new franchise agreements expressly provide that MSFA has the right to develop or designate computer software programs and accounting system software and require that plaintiff use them. Plaintiff maintains that it had "no choice" but to renew the franchise agreements, and that it expected that MSFA would not attempt to install MetalTech until it was functional.

MSFA is seeking to install MetalTech in JDS' stores. Installation was originally scheduled to occur on May 14, 2017, but has been postponed and is now scheduled to begin on June 23, 2017. Plaintiff seeks a preliminary injunction preventing MSFA from installing MetalTech in its stores.

## III. Discussion

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24(2008); *see also Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)(a preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"). "In order to obtain a preliminary injunction, a party must demonstrate: 1) that it is subject to irreparable harm; and 2) either a) that it will likely succeed on the merits or b) that there are sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and that a balancing of the hardships tips 'decidedly' in favor of the moving

party." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997).

Here, JDS contends that it is likely to succeed on the merits of its claims for violation of the FIPA and that it will suffer irreparable harm to its business interests if forced to install MetalTech. For the reasons discussed below, the Court disagrees.

## A. Likelihood of Success on the Merits

In arguing that it is likely to succeed on the merits of its claims, JDS contends that MSFA's actions violated FIPA[1] - specifically, RCW §§ 19.100.180 (1), (2)(B), and (2)(H). Section 19.100.180(1) provides that the parties to a franchise agreement shall "deal with each other in good faith." Section 19.100.180(2)(B) provides that "it shall be an unfair or deceptive act or practice or an unfair method of competition and therefore unlawful" for a franchisor to "[r]equire a franchisee to purchase or lease goods or services of the franchisor or from approved sources of supply unless and to the extent that the franchisor satisfies the burden of proving that such restrictive purchasing agreements are reasonably necessary for a lawful purpose justified on business grounds, and do not substantially affect competition."

---

[1] The parties' franchise agreements contain a New York choice-of-law provision. However, FIPA provides that "[a]ny agreement, condition, stipulation or provision, including a choice of law provision, purporting to bind any person to waive compliance with any provision of this chapter or any rule or order hereunder is void." RCW § 19.100.220(2). Accordingly, and because neither party argues otherwise, the Court assumes FIPA governs the parties' relationship.

Section 19.100.180(2)(H) provides that "it shall be an unfair or deceptive act or practice or an unfair method of competition and therefore unlawful" for a franchisor to "[i]mpose on a franchisee by contract, rule, or regulation, whether written or oral, any standard of conduct unless the person so doing can sustain the burden of proving such to be reasonable and necessary."

With respect to 19.100.180(1), "Washington courts have . . . recognized that the duty of good faith [set forth in FIPA] does not operate to create rights not contracted for, nor does it override the express terms of a contract." *Fleetwood v. Stanley Steemer Int'l*, Inc., 725 F. Supp. 2d 1258, 1276 (E.D. Wash. 2010) (internal quotation omitted). Additionally, Washington courts have held that, with respect to good faith requirements generally, "[l]ack of good faith . . . is the equivalent of bad faith and bad faith embraces more than bad judgment or negligence and imports dishonest purpose, moral obliquity, conscious wrongdoing, breach of known duty through some ulterior motive or ill will partaking of the nature of fraud, and embraces actual intent to mislead or deceive another." *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 9 Wash. App. 180, 189, 511 P.2d 1020, 1025 (Wash. Ct. of Appeals Div. 1 1973).

Here, the express terms of the franchise agreements permit MSFA to develop or designate computer software programs and accounting system software and require that JDS use them. Plaintiff has identified no evidence whatsoever that MSFA's

development or implementation of MetalTech were undertaken in bad faith or that MSFA had any improper purpose or motivation. To the contrary, the evidence (including the declarations submitted by plaintiff) shows that MSFA has devoted significant time and resources to MetalTech, including efforts to resolve the flaws identified by its franchisees. Indeed, it would make little sense for MSFA to deliberately sabotage its franchisees' business operations, thereby injuring its own revenue stream. Under these circumstances, the Court does not believe plaintiff has demonstrated that it is likely to succeed on the merits of this claim (or even that there are serious questions in this regard). *See Doyle v. Nutrilawn U.S., Inc.*, 2010 WL 1980280, at *8 (W.D. Wash. May 17, 2010) (granting summary judgment on claim for violation of § 19.100.180(1) where plaintiff failed to show that franchisor failed to act in good faith in connection with the terms of the franchise agreement). Moreover, these same considerations dictate the conclusion that plaintiff is unlikely to succeed on its claim for breach of the implied covenant of good faith and fair dealing. *See id.* (evaluating FIPA good faith claim and implied covenant of good faith and fair dealing claim under same standard).

Turning to § 19.100.180(2)(B), both parties acknowledge that no case law exists interpreting this provision of the FIPA. However, the statute itself provides that "[i]n determining whether a requirement to purchase or lease goods or services constitutes an

7

unfair or deceptive act or practice or an unfair method of competition the courts shall be guided by the decisions of the courts of the United States interpreting and applying the anti-trust laws of the United States." In other words, it is clear that § 19.100.180(2)(B) is aimed at preventing restrictive purchasing agreements that improperly restrain competition. Plaintiff has identified no authority for the proposition that a franchisor requiring the use of specific computer software violates the anti-trust laws. Indeed, plaintiff has apparently used Metal Magic, which is also a proprietary program provided by MSFA, for approximately ten years without complaint or claim of a FIPA violation. Moreover, federal courts have repeatedly held that it is permissible for a franchisor to require use of its proprietary computer systems. *See, e.g., La Quinta Corp. v. Heartland Properties LLC,* 603 F.3d 327, 336 (6th Cir. 2010)*; Bores v. Domino's Pizza, LLC*, 530 F.3d 671, 676 (8th Cir. 2008). Again, the Court finds that plaintiff has not met its burden of demonstrating either that it is likely to succeed on the merits of its claim or that serious questions exist in this regard.

Finally, with respect to § 19.100.180(2)(H), again, there is no case law interpreting this provision of the FIPA. However, commentators have noted that the franchise system relies in large part on a franchisor's ability to ensure uniformity and limit franchisee discretion and that § 19.100.180(2)(H) should therefore

not be interpreted "to undercut a franchisor's business judgment in establishing standards for its franchise system." Douglas C. Berry et. al., *State Regulation of Franchising: The Washington Experience Revisited*, 32 Seattle U. L. Rev. 811, 890 (2009). The Court agrees. The Supreme Court of Washington has explained that while "FIPA is designed to protect franchisees from franchisors," it remains the case that "[a] franchise relationship is a business rather than a fiduciary relationship" and "courts generally give considerable deference to franchisors' efforts to restructure, retrench, or wind down their franchise systems." *Corp v. Atl. Richfield Co.*, 122 Wash. 2d 574, 585-87 (1993). The interpretation of § 19.100.180(2)(H) urged by plaintiff would essentially place the Court in a supervisory role over the franchisor, responsible for deciding in each instance whether a particular business decision was truly necessary. The Court finds this interpretation overly broad and inconsistent with the clear intent of § 19.100.180.

In sum, the Court finds it unlikely that plaintiff will succeed on the merits of its claims against defendant, and determines that plaintiff has failed to raise sufficiently serious questions in this regard to merit entry of a temporary restraining order or preliminary injunction.

**B.   Irreparable Harm**

Assuming *arguendo* that the Court believed plaintiff was likely

to succeed on the merits of its claims, entry of a preliminary injunction would still not be warranted, because plaintiff has failed to show that it is likely to suffer irreparable harm.

A showing of irreparable harm is considered the "single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990). "A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995).

Here, plaintiff argues that it is likely to suffer irreparable harm if it is required to install MetalTech, because MetalTech is so flawed that it will substantially impair plaintiff's ability to do business, thereby damaging its reputation and goodwill, driving away customers, causing employee morale issues, and resulting in lost sales. The Court finds that plaintiff has failed to show that these potential harms rise above the speculative level.

Plaintiff's motion relies primarily on the anecdotal experiences of other MSFA franchisees who have installed MetalTech. However, the record shows that MSFA began the installation of MetalTech in 2015 and that 78 out of 86 Metal Supermarket stores are now using MetalTech. Contrary to the dire predictions set forth in plaintiff's papers, stores that have converted to

MetalTech have, on average, seen their sales increase in the months after the conversion.  In short, while it is true that "[t]he total loss of a business clearly constitutes irreparable injury," *Galvin v. N.Y. Racing Ass'n*, 70 F. Supp. 2d 163, 170 (E.D.N.Y. 1998), and "the loss of business need not be total, so long as it is so great as to seriously compromise the company's ability to continue in its current form," plaintiff has fallen short of demonstrating that this is such a case.  It appears to be true that MetalTech has glitches and flaws that cause frustration and lost time to MSFA's franchisees.  On the record before it, however, this Court cannot conclude that any impediment imposed by MetalTech is so great as to impair plaintiff's ability to continue operating its business.  As a result, the extraordinary remedy of a preliminary injunction is inappropriate.

## IV.  Conclusion

For the reasons set forth above, plaintiff's motion for an expedited hearing (Docket No. 2) is denied as moot and plaintiff's motion for a temporary restraining order and a preliminary injunction (Docket No. 3) is denied.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:    June 20, 2017
          Rochester, New York